**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| GREENSTAR TECHNOLOGIES, LLC, and BLUE SURGE TECHNOLOGIES, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> RAMAKRISHNA REDDY GOURU, *et al.*, <br><br> Defendants. | Civil Action No. 23-21293 (MAS) (JBD) <br><br> **MEMORANDUM OPINION** |

**SHIPP, District Judge**

 This matter comes before the Court upon Defendant LG Electronics USA, Inc.'s ("LGEUS") Motion to Dismiss (ECF No. 78) and Defendant Ramakrishna Reddy Gouru's ("Gouru") (collectively, "Defendants") Motion to Dismiss (ECF No. 80) Plaintiffs Greenstar Technologies, LLC ("Greenstar") and Blue Surge Technologies, LLC's ("Blue Surge") (collectively, "Plaintiffs") Third Amended Complaint (the "TAC") (ECF No. 75). Plaintiffs opposed both Motions to Dismiss (ECF Nos. 83, 84), and Defendants replied (ECF Nos. 85, 86). After careful consideration of the parties' submissions, the Court decides Defendants' Motions to Dismiss without oral argument pursuant to Federal Rule of Civil Procedure 78(b)[1] and Local Civil Rule 78.1(b). For the reasons set forth below, the Court grants both Defendants' Motions to Dismiss.

---

[1] All references to "Rule" or "Rules" hereafter refer to the Federal Rules of Civil Procedure.

I.    **BACKGROUND**[2]

A.    **Factual Background**

The facts underlying this matter have been summarized by the Court in its Memorandum Order denying Plaintiffs' *ex parte* application for civil seizure under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1826 *et seq.* (Nov. 2023 Mem. Order 2-5, ECF No. 8.) The Court incorporates those facts and only summarizes the relevant facts necessary to resolve Defendants' Motions to Dismiss Plaintiffs' TAC.

Plaintiffs Greenstar and Blue Surge are incorporated in New Jersey and maintain offices in Somerset, New Jersey. (TAC ¶¶ 1, 2, ECF No. 75.) Plaintiffs are engaged in developing the "Internet of Things," ("IoT") which includes software platforms, cloud computing, and Artificial Intelligence ("AI") tools and applications. (*Id.* ¶¶ 14, 27.) Defendant Ramakrishna Reddy Gouru ("Gouru") is a former employee of Pacific Controls Cloud Services, Inc. ("PCCS"). (*Id.* ¶ 29.) PCCS is an entity that provided cloud services to Plaintiffs. (*Id.*) As an employee of PCCS, Gouru executed a Confidentiality Agreement and an Employment Contract, which required him to "keep all trade secrets that he was provided access to confidential." (*Id.* ¶ 30.) During his tenure at PCCS, Gouru was involved in the development of Plaintiffs' technologies, and was provided with a "super admin login" through which he could access Plaintiffs' servers. (*Id.* ¶¶ 32, 50.) Gouru resigned from PCCS on July 19, 2023. (*Id.* ¶ 29.) After his resignation from PCCS, Gouru began working for Defendant LGEUS.[3]

---

[2] For the purpose of these Motions to Dismiss, the Court accepts as true and summarizes the facts alleged in the TAC. *See Phillips v. County of Allegheny*, 515 F.3d 224. 233 (3d Cir. 2008).

[3] Plaintiffs do not allege the date on which Gouru's employment at LGEUS began. (*See generally* TAC.)

Following his resignation, and between September 19, 2023, and October 6, 2023, Gouru allegedly accessed Plaintiffs' servers 22 times and for over 470 hours, from his residence in Belle Mead, New Jersey. (*Id.* ¶ 50.) In addition, on October 1, 2023, at least 31 attempts were made to access Plaintiffs' servers from an IP address at LG POWERCOMM, a subsidiary of LGEUS. (*Id.* ¶ 58.) Plaintiffs allege that during this time, Gouru downloaded Plaintiffs' files, stole Plaintiffs' trade secrets, manipulated Plaintiffs' virtual servers, and deleted source code from Plaintiffs' platform. (*Id.* ¶ 49.) On November 3, 2023, Gouru called the son of Greenstar's Chief Executive Officer and allegedly admitted he intended to "transfer [Plaintiffs'] platform to LG[EUS]." (*Id.* ¶ 65.) Plaintiffs allege "[u]pon information and belief" that LGEUS recruited Gouru to work for the company "because of his knowledge and expertise with respect to Plaintiffs' trade secrets," that Gouru acted on behalf of LGEUS in accessing and misappropriating Plaintiffs' trade secrets, and that LGEUS and/or its parent company are using or intend to use the misappropriated trade secrets in their business operations. (*Id.* ¶¶ 102-104.) After discovering the breach of their servers, Plaintiffs changed their login credentials and shut down the server infrastructure access. (*Id.* ¶ 50.)

## B.    Procedural Background

Plaintiffs initiated this action on October 19, 2023, alleging violations of the Defend Trade Secrets Act ("DTSA"), the Computer Fraud and Abuse Act ("CFAA"), and state-law claims of conversion, theft of trade secrets, and civil conspiracy, against fictitious defendants. (Compl., ECF No. 1.) Shortly after filing the Complaint, Plaintiffs filed an *ex parte* application seeking the civil seizure of computers and property in Gouru's possession. (ECF No. 6-1.) The Court denied Plaintiffs' request and found that Plaintiffs' request was largely based on conjecture and speculation. (Nov. 2023 Mem. Order 7-9.) Plaintiffs thereafter filed an Amended Complaint, naming Gouru and LG Electronics, Inc. as defendants, and adding a claim under the Racketeer

Influenced and Corrupt Organizations Act ("RICO"). (Am. Compl., ECF No. 9). Plaintiffs also filed a second *ex parte* application seeking a civil seizure of computers and property in Gouru's possession, or a temporary restraining order. (ECF No. 10.) The Court again denied Plaintiffs' request, finding that Plaintiffs had failed to provide sufficient proofs that would warrant the extraordinary relief sought. (Dec. 2023 Mem. Order 10, ECF No. 16.)

Plaintiffs thereafter filed a Second Amended Complaint ("SAC"), this time asserting claims against Gouru, LGEUS, and Akhil Karunakaran ("Karunakaran"), and removing LG Electronics, Inc. as a defendant.[4] (ECF No. 20). Plaintiffs also filed a motion for a temporary restraining order and preliminary injunction. (ECF No. 28). By stipulation and order dated April 8, 2024, all deadlines in this matter were stayed pending a settlement conference. (ECF Nos. 68, 69.) That settlement conference, which occurred on August 1, 2024, was unsuccessful. Plaintiffs subsequently filed the TAC, asserting the same claims and adding a claim for unjust enrichment. (ECF No. 75.) Defendants Gouru and LGEUS each moved to dismiss the TAC. (ECF Nos. 78, 80.)

## II.    LEGAL STANDARD

Rule 8(a)(2) "requires only a 'short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

A district court conducts a three-part analysis when considering a motion to dismiss under Rule 12(b)(6). *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). First, the court must identify "the elements a plaintiff must plead to state a claim." *Ashcroft v. Iqbal*, 556 U.S. 662, 675

---

[4] Plaintiffs have not yet filed proof of service of the SAC or TAC on Defendant Karunakaran, who Plaintiffs allege has relocated to India. (TAC ¶ 5.)

(2009). Second, the court must identify all of the plaintiff's well-pleaded factual allegations, accept them as true, and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). The court can discard bare legal conclusions or factually unsupported accusations that merely state the defendant unlawfully harmed the plaintiff. *See Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Third, the court must determine whether "the [well-pleaded] facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 678). On a Rule 12(b)(6) motion, the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

## III.    **DISCUSSION**

### A.    **Defend Trade Secrets Act Claim (Count One)**

Both moving Defendants argue that Plaintiffs have not pled a prima facie claim for theft of trade secrets under the DTSA. (LGEUS Moving Br. 13-20, ECF No. 78-1; Gouru Moving Br. 4-10, ECF No. 80-1.) Specifically, Defendants argue that Plaintiffs fail to: (1) adequately identify the subject matter of Plaintiffs' purported trade secrets "with sufficient particularity to separate it from matters of general knowledge in the trade;" (2) adequately plead that they protected their trade secrets; and (3) adequately plead any actual or threatened misappropriation. (LGEUS Moving Br. 14-18; Gouru Moving Br. 4-10.)

To survive a motion to dismiss under the DTSA, a plaintiff must plead facts that establish: (1) "the existence of a trade secret, defined generally as information with independent economic value that the owner has taken reasonable measures to keep secret;" (2) that the trade

secret is "related to a product or service used in, or intended for use in, interstate or foreign commerce;" and (3) "the misappropriation of that trade secret, defined broadly as the knowing improper acquisition, or use or disclosure of the secret." *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 906 (3d Cir. 2021). "The essential inquiry for a trade secret is whether the information derives economic value, the information is not readily ascertainable by other means, and the holder endeavors for it to remain confidential." *Scherer Design Grp., LLC v. Schwartz*, No. 18-3540, 2018 WL 3613421, at *4 (D.N.J. July 26, 2018), *aff'd sub nom., Scherer Design Grp., LLC v. Ahead Eng'g LLC*, 764 F. App'x 147 (3d Cir. 2019).

Construing the facts in a light most favorable to Plaintiffs, the Court finds that Plaintiffs fail to sufficiently plead a claim for theft of trade secrets under the DTSA. Plaintiffs allege that Gouru stole and provided to LGEUS the "Greenstar Trade Secrets," which Plaintiffs define as their software platform, "the AI applications and IoT technology developed on behalf of Plaintiffs . . . and the related software, applications, and data." (TAC ¶ 35.) Plaintiffs also allege that their IoT technology includes their "revolutionary Communications Protocol," which "enabled hardware-agnostic communication protocol" and was "developed for device-to-enterprise communications with the IoT platform." (TAC ¶ 46; *see* Gouru Moving Br. 2-3.) Beyond these general descriptions, Plaintiffs do not provide further detail regarding the Greenstar Trade Secrets. (*See generally* TAC.)

At the pleadings stage, Plaintiffs must provide Defendants with notice "to ascertain at least the boundaries within which the secret lies" and detail sufficient facts that allow the Court to infer a trade secret claim. *Oakwood Lab'ys LLC*, 999 F.3d at 906. By defining Plaintiffs' trade secrets as the entirety of Plaintiffs' software platform, as well as generic categories including "AI applications and IoT technology" and "related software, applications, and data," Plaintiffs fail to

6

provide the requisite specificity regarding the allegedly misappropriated information. *See Voorhees v. Tolia*, No. 23-1115, 2023 WL 4636738, at *2 (3d Cir. July 20, 2023) (finding plaintiff's description of her trade secrets as the "Augmented Reality for Education (AR4ED) software services," a "Pear Imaginality Play and Create program," "AR worksheets and lessons," and "information related to the concepts, ideas and products for . . . AR4ED" were "wholly generic" and insufficiently specific to sustain a trade secrets claim); *Diversified Indus., Inc. v. Vinyl Trends, Inc.*, No. 13-6194, 2014 WL 1767471, at *8 (D.N.J. May 1, 2014) (dismissing trade secrets claim as insufficiently pled where plaintiff alleged defendant "obtained information concerning the sound rating and VOC content" of the manufacturer's "Eternity and Eternity SG products", as well as "information concerning other product specifications as well as the development, marketing and sale" of the products).

While the Court recognizes the difficulty inherent in articulating what trade secrets Defendants may have misappropriated, "care must [still] be taken to not allow a plaintiff in a trade secret misappropriation case to make generalized claims that leave a defendant wondering what the secrets at issue might be[.]" *Oakwood*, 999 F.3d at 907. In addition to the exhibits Plaintiffs attached to the TAC which demonstrate an IP address associated with Gouru accessed their servers between September and October 2023, Plaintiffs may, for example, identify the types of information Gouru downloaded, the quantity of documents Gouru downloaded, or the file names of the documents Gouru deleted or copied. (*See* ECF Nos. 75-1, 75-2, 75-3); *Rodgers Grp., LLC v. Lewis*, No. 22-482, 2022 WL 4095785, at *4 (D.N.J. Sep. 7, 2022) (denying defendants' motion to dismiss DTSA claim where plaintiff alleged the number and filenames of the documents defendants allegedly copied or downloaded, and attached a log of the data defendants purportedly looted). Plaintiffs may also attach documents describing their trade secrets or explaining in further

detail what technology Plaintiffs accuse Defendants of taking. *Oakwood*, 999 F.3d at 907 (denying defendants' motion to dismiss DTSA claim where plaintiff "specif[ied] in detail secrets related to the [project] that [the plaintiff] accuse[d] the [d]efendants of taking and using," "gave a very precise example by pointing to a particular document, the Leprolide Memo," and "specificied the contents of that document"). Because Plaintiffs fail to provide sufficient detail regarding their trade secrets to "separate it from matters of general knowledge in the trade," *id.* at 906, the Court dismisses Plaintiffs' DTSA claim (Count I) without prejudice against Defendants.

## B.  Computer Fraud and Abuse Act Claim (Count Two)

Defendants next argue that the Court should dismiss Plaintiffs' CFAA claim (Count Two), under three theories, either one of which defeats this cause of action: (1) Plaintiffs fail to allege that the data Defendants purportedly stole was protected; (2) Plaintiffs fail to allege that Gouru's access was obtained without authorization; and (3) the alleged damages are not actionable under the CFAA. (Gouru Moving Br. 20-21; LGEUS Moving Br. 21-23.) Conversely, Plaintiffs assert that the TAC alleges: (1) the necessary elements to plead a violation of the CFAA; and (2) that Plaintiffs suffered at least $5,000 in damages, satisfying the loss element. (Pls.' LGEUS Opp'n Br. 20-22, ECF No. 84; Pls.' Gouru Opp'n Br. 12-16, ECF No. 83.)

The CFAA criminalizes intentional access to a computer "without authorization." *Van Buren v. United States*, 593 U.S. 374, 378 (2021) (citing 18 U.S.C. § 1030(a)(2)). If a defendant, however, obtains information that is "otherwise available to [him]," he does not violate the CFAA even if he has "improper motives for obtaining information." *Id.*

To state a claim under the CFAA, a plaintiff must allege that the defendant: (1) accessed a "protected computer;" (2) has done so without authorization or by exceeding such authorization as was granted; (3) has done so "knowingly" and with "intent to defraud"; and (4) as a result has "further[ed] the intended fraud and obtain[ed] anything of value." *P.C. Yonkers, Inc. v.*

8

*Celebrations the Party & Seasonal Superstore, LLC*, 428 F.3d 504, 508 (3d Cir. 2005) (quoting 18 U.S.C. § 1030(a)(4)). A plaintiff must also plead facts that plausibly demonstrate: (1) loss or damage that exceeds or equals $5,000 in value; and (2) that the defendant caused the loss or damage by violating the CFAA. *Christine v. Nat'l Inst. for Newman Stud.*, No. 16-6572, 2019 WL 1916204, at *4 (D.N.J. Apr. 30, 2019).

Without alleging damages or monetary loss exceeding $5,000, a claim under the CFAA cannot survive a motion to dismiss. *Volpe v. Abacus Software Sys. Corp.*, No. 20-10108, 2021 WL 2451968, at *6 (D.N.J. June 16, 2021) ("A plaintiff must allege that the defendant's actions, in violating the CFAA, 'caused damage or loss to the plaintiff in excess of $5,000 in a one-year period.'"). The CFAA defines loss as "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." 18 U.S.C. § 1030(e)(11). Most district courts in the Third Circuit require that "the 'loss' must generally be 'in some way related to functionality of the protected computer at issue.'" *Rodgers Grp., LLC*, 2022 WL 4095785, at *7 (citation omitted). Thus, grievances that consist of "lost business opportunities, damaged reputation, loss of assets, and other missed revenue," are generally insufficient to satisfy the statute's loss requirement. *Sealord Holdings, Inc. v. Radler*, No. 11-6125, 2012 WL 707075, at *4 (E.D. Pa. Mar. 6, 2012) (citing cases).

Here, Plaintiffs' allegations regarding incurred loss or damage are insufficient to state a CFAA claim. Plaintiffs contend that they expended "over twenty-five million dollars" in developing the Greenstar Trade Secrets, and that they have suffered the "more than twenty-five million dollars . . . expended by Plaintiffs in the development of the Greenstar Trade

*In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 368 (3d Cir. 2010) (citation omitted). Furthermore, the plaintiff must plead a pattern of racketeering activity by "showing that the defendants engaged in at least two predicate acts within ten years of each other." *Amos v. Franklin Fin. Servs. Corp.*, 509 F. App'x 165, 168 (3d Cir. 2013). Racketeering activity is "any act or threat involving specified state-law crimes, any act indictable under specified federal statutes, and certain federal offenses." *Id.* (internal quotation marks and citation omitted). Any of these offenses are "predicate acts of racketeering." *Id.* (citing *Lum v. Bank of Am.*, 361 F.3d 217, 223 (3d Cir. 2004).

Plaintiffs' RICO claim must be dismissed because the TAC fails to plausibly plead the existence of an enterprise. While an enterprise may be comprised of a "group of individuals associated in fact," 18 U.S.C. § 1961(4), "it is not sufficient to merely allege claims against multiple defendants and call them an enterprise." *Miller-Bell v. Hall*, No. 23-924, 2023 WL 5153677, at *7 (W.D. Pa. Aug. 9, 2023). Here, Plaintiffs contend that the enterprise "consists of Gouru, Karunakaran, other employees of LG[EUS]," but wholly fail to plead any facts regarding the association of these defendants, their roles and participation in the enterprise, or the alleged shared purpose that existed between these defendants such that a single joint enterprise exists. (Pls.' LGEUS Opp'n Br. 10; *see generally* TAC). Instead, the only association the Court can discern between Gouru, Karunakaran, and LGEUS appears to be that Gouru is now employed by LGEUS, and Karunkaran used to work for Gouru at PCCS. (TAC ¶¶ 56, 68.) Such bare and conclusory allegations are plainly insufficient to plead an enterprise under § 1962(c). *Eng. v. Kaplan*, No. 18-01617, 2023 WL 1360864, at *9 (D.N.J. Jan. 31, 2023) (dismissing RICO claim where plaintiff failed to explain "the shared purpose among the enterprise's purported associates, the relationships between them, or the structure of their association"); *Miller-Bell*, 2023 WL

Secrets . . . plus projected lost profits likely to involve at least hundreds of millions of dollars" because "Gouru and LG[EUS] possess the only unmodified versions of Plaintiffs' trade secrets." (TAC ¶¶ 37, 48; Pls.' Gouru Opp'n Br. 14.) These alleged damages, which consist of lost assets and missed revenue, are insufficient to state a claim under the CFAA. *See Sealord Holdings, Inc.*, 2012 WL 707075, at *4 (dismissing CFAA claim where plaintiff only alleged "business damages resulting from defendants' alleged misappropriation"); *Volpe*, 2021 WL 2451968, at *6 (requiring either (1) damage to the physical computer system itself or its services; or (2) damages resulting from interruption of computer services). And while Plaintiffs allege Gouru "deleted critical files from Plaintiffs' essential servers," Plaintiffs do not allege whether this conduct resulted in monetary damages "related to functionality of the protected computer at issue," or in what amount. *Rodgers Grp., LLC*, 2022 WL 4095785, at *7. Accordingly, the Court dismisses Count Three against Defendants without prejudice.

### C. RICO Claim (Count Three)

Plaintiffs also claim that Defendants' alleged conduct violated the RICO Act. Defendants argue that Plaintiffs' RICO claim fails on three grounds: (1) Plaintiffs fail to plead facts to indicate that an "enterprise" existed; (2) Plaintiffs fail to allege a "pattern" of racketeering activity; and (3) Plaintiffs fail to plead proof of special damages. (LGEUS Moving Br. 26-27; Gouru Moving Br. 13-16.) Plaintiffs, in turn, argue that they have adequately pled a RICO claim.

To state a RICO claim, a plaintiff must allege: "(1) the conducting of, (2) an enterprise, (3) through a pattern, (4) of racketeering activity." *D'Ambly v. Exoo*, No. 20-12880, 2021 WL 5083816, at *3 (D.N.J. Nov. 1, 2021) (citing *Gunter v. Ridgewood Energy Corp.*, 32 F. Supp. 2d 166, 173 (D.N.J. 1998)); 18 U.S.C. § 1962. To satisfy the "enterprise" element, the plaintiff must show "a 'structure,' that is, a common 'purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose.'"

5153677, at *7 ("While Plaintiffs need not prove their claims at the pleading stage, the existence of an enterprise must must be plausible based on the facts alleged.").

Even if Plaintiffs had sufficiently pled the existence of an enterprise, Plaintiffs' RICO claim would nonetheless fail because it does not adequately allege a pattern of racketeering activity. Under RICO, a pattern of racketeering activity "must include the commission of at least two acts of racketeering activity that are related and create a threat of continued criminal activity." *Battiste v. Arbors Mgmt., Inc.*, 522 F. App'x 171, 172-73 (3d Cir. 2013) (citing *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 495-96 (1985)). The requisite "continuity" can be either closed- or open-ended in form. Closed-ended continuity is established by "proving a series of related predicates over a substantial period of time," which, under the case law of this Circuit, "appears to mean a period of at least twelve consecutive months." *Bro-Tech Corp. v. Thermax, Inc.*, 651 F. Supp. 2d 378, 403 (E.D. Pa. 2009) (citing cases). In contrast, open-ended continuity is shown through "past conduct that by its nature projects into the future with a threat of repetition." *Id.* The Supreme Court has explained that "[p]redicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement" because "Congress was concerned in RICO with long-term criminal conduct." *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 242 (1989).

Here, the alleged predicate offenses—theft of Plaintiffs' trade secrets—occurred between September 19, 2023 and October 6, 2023. (Pls.' LGEUS Opp'n Br. 11-14.) This two-month time

period is insufficient to form a pattern of racketeering activity.[5] *Battiste*, 522 F. App'x at 1713 (finding ten months was not "substantial enough" of a time period to give rise to a pattern of racketeering activity); *see also Ross v. Celtron Int'l, Inc.*, 494 F. Supp. 2d 288, 303 (D.N.J. 2007) (finding no "pattern" of racketeering activity where complaint alleged "an isolated incident of fraud"). For the foregoing reasons, Plaintiffs' RICO claim (Count Three) is dismissed without prejudice against Defendants.

###### D.       State-Law Claims (Counts Four, Five, Six, and Seven)

Because the Court dismisses the federal claims and there is no other apparent basis for subject matter jurisdiction, the Court must decide whether to exercise supplemental jurisdiction over Plaintiffs' remaining state law claims. *Borough of W. Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995). Generally, "where the claim over which the district court has original jurisdiction is dismissed before trial, the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." *Id.* Here, none of the aforementioned considerations warrant exercising jurisdiction over the remaining claims. Thus, the Court dismisses the TAC in its entirety. *Doe v. Mercy Catholic Med. Ctr.*, 850 F.3d 545, 567 (3d Cir. 2017) ("A federal court may decline to exercise supplemental jurisdiction over state law claims when it dismisses all claims over which it has original jurisdiction.").

---

[5] Plaintiffs invite the Court to consider the alleged pattern of racketeering activity as open-ended in form because "LG[EUS] will continue to benefit from use of the stolen trade secrets." (Pls.' Gouru Opp'n Br. 19-20.) Courts in this Circuit have rejected similar arguments, and this Court does so here. *See National Risk Mgmt. v. Bramwell*, No. 92-4366, 1992 WL 368370, at *4 (E.D. Pa. Dec. 3, 1992) ("[t]he mere fact that defendants could possibly continue to benefit from their past criminal conduct is insufficient [to establish a threat of future criminal activity]" and "to conclude otherwise would render the continuity requirement meaningless"); *Bro-Tech Corp.*, 651 F. Supp. 2d at 403 (explaining "[d]efendants' alleged ongoing business use of the information, relied on by [p]laintiffs to demonstrate open-ended continuity, is simply not the type of long-term criminal activity that RICO prohibits").

## IV.  CONCLUSION

For the reasons set forth above, LGEUS's Motion to Dismiss (ECF No. 78) and Gouru's Motion to Dismiss (ECF No. 80) are granted, and the TAC is dismissed without prejudice.[6] The Court will issue an Order consistent with this Memorandum Opinion.

_____

MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE

---

[6] Courts generally grant leave to amend unless amendment of the complaint would be inequitable or futile. *See, e.g.*, *Phillips v. Allegheny County.*, 515 F.3d 224, 245 (3d Cir. 2008). Here, the Court finds that leave to amend will not be inequitable or futile. The Court thus permits Plaintiffs to amend the complaint within thirty days to correct the deficiencies identified.