<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| GREENSTAR TECHNOLOGIES, LLC, and BLUE SURGE TECHNOLOGIES, LLC,<br><br>       Plaintiffs,<br><br>    v.<br><br>RAMAKRISHNA REDDY GOURU, *et al.*,<br><br>       Defendants. | Civil Action No. 23-21293 (MAS) (JBD)<br><br>**MEMORANDUM OPINION** |

<u>**SHIPP, District Judge**</u>

This matter comes before the Court upon Defendant Ramakrishna Reddy Gouru's ("Gouru") Motion to Dismiss (ECF No. 97) and Defendant LG Electronics USA, Inc.'s ("LGEUS," and collectively with Gouru, "Defendants") Motion to Dismiss (ECF No. 98) Plaintiffs Greenstar Technologies, LLC ("Greenstar") and Blue Surge Technologies, LLC's ("Blue Surge," and collectively with Greenstar, "Plaintiffs") Fourth Amended Complaint (the "FAC") (ECF No. 89). Plaintiffs opposed both motions (ECF Nos. 101, 102) and Defendants replied (ECF Nos. 103, 104). After careful consideration of the parties' submissions, the Court decides Defendants' Motions to Dismiss without oral argument under Local Civil Rule 78.1(b). For the reasons below, Defendants' Motions to Dismiss are granted in part and denied in part.

## I.    BACKGROUND[1]

### A.    Factual Background

Greenstar and Blue Surge are New Jersey limited liability companies with offices in Somerset, New Jersey. (FAC ¶¶ 1-2, ECF No. 89.) Plaintiffs have a team working "to develop groundbreaking technologies and software platforms for real-time data analysis from the Internet of Things ('IoT'), using advanced Artificial Intelligence ('AI') tools and applications." (*Id.* ¶ 14.) Plaintiffs claim to have a number of trade secrets, including "two [] platforms, seven applications for those platforms, two [] protocols, one [] algorithm, two [] methodologies, one [] module, one [] architecture[,] and one [] schema." (*Id.* ¶ 15.) More specifically, Plaintiffs claim that the trade secrets at issue in this case include: (1) Plaintiffs' SurgeCloud IoT platform and certain "technologies and frameworks that are central to its architecture"; (2) Plaintiffs' Mobile Business Processor which contains "core AI components"; (3) seven applications of the SurgeCloud IoT Platform; (4) the Communication Protocol; (5) the "'SurgeCloud' IoT Data Serialization Algorithm and Implementation"; (6) the "'SurgeCloud' Cassandra Telemetry Schema"; (7) the "'SurgeCloud' Presentation-Layer Store-Dispatcher State Management Architecture"; (8) the "'EdgeComputeEngine' Real-Time Analytics Module"; (9) the "G2021ES Gateway Handshake and Communications Protocol"; (10) the "'SurgeCloud' OKD4 Microservices Platform Installation and Configuration Methodology"; and (11) the "'SurgeCloud' Rancher-Kubernetes Microservices Platform Installation and Configuration Methodology" (collectively, the "Greenstar Trade Secrets"). (*Id.*)

---

[1] For the purpose of considering the instant motion, the Court accepts all factual allegations in the FAC as true. *See Phillips v. County of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008).

2

Gouru is a former employee of Pacific Controls Cloud Services, Inc. ("PCCS"), an entity that provided cloud services to Plaintiffs. (*Id.* ¶ 32.) In his role with PCCS, Gouru "gained intimate knowledge of and access to Plaintiffs' groundbreaking trade secrets and technology, including the Greenstar Trade Secrets." (*Id.*) Specifically, Gouru had access to a "'compute super admin login'[,] which had been reserved for a select few members of Plaintiffs' technology development team while employed by Plaintiffs or PCCS" given Gouru's "involvement with the development of Plaintiffs' trade secrets." (*Id.* ¶ 46.) As an employee of PCCS, "Gouru was required to, and did, execute a Confidentiality Agreement and an Employment Contract, both of which required him to keep all trade secrets that he was provided access to . . . confidential and to not disclose [the] same." (*Id.* ¶ 33.) Gouru resigned from PCCS on July 19, 2023, at which time "Plaintiffs' permission for Gouru to utilize [the 'compute super admin login'] ceased . . . ." (*Id.* ¶¶ 32, 41, 46.) After terminating his employment with PCCS, Gouru began working for LGEUS as "Director of Data Solutions[.]"[2] (*Id.* ¶¶ 15, 32.)

Plaintiffs allege that LGEUS "actively recruited Gouru specifically to gain access to and use Plaintiffs' technology, including the Greenstar Trade Secrets" and "collaborated with [Gouru] and encouraged him to access and steal the Greenstar Trade Secrets." (*Id.* ¶¶ 28-29.) Following Gouru's resignation from PCCS, from September 18, 2023, to October 5, 2023, Gouru gained access to Plaintiffs' computer server network "on twenty-two [] occasions for a total of over four hundred seventy [] hours" from his home in Belle Mead, New Jersey. (*Id.* ¶ 19, 32.) In addition, from September 18, 2023, to October 5, 2023, access to Plaintiffs' network was made or attempted from LGEUS's headquarters in Englewood Cliffs, New Jersey "on five [] occasions for a total of

_____

[2] Plaintiffs do not allege the precise date on which Gouru began employment with LGEUS. (*See generally* FAC.)

over twenty-seven [] hours[.]" (*Id.* ¶ 20.) Plaintiffs further allege that Gouru traveled to South Korea and advised employees from LGEUS's parent company on "how to attempt to gain unlawful access to Plaintiffs' servers from their corporate computer and/or other computers[,]" which led to at least thirty-one separate attempts to gain access to Plaintiffs' network from South Korea. (*Id.* ¶¶ 22-23.) After gaining access to Plaintiffs' system, Gouru "deliberately accessed and deleted critical files from Plaintiffs' essential servers." (*Id.* ¶ 26.) Gouru also modified certain files related to the Greenstar Trade Secrets. (*Id.* ¶ 47.) Additionally, "on or around November 3, 2023, Gouru called the son of Greenstar's CEO and acknowledged that he had made the unauthorized break-ins to Plaintiffs' servers[,]" and admitted that he was in South Korea marketing the trade secrets to LGEUS's parent company "with the expectation he would be compensated by LG[EUS] for his transfer of the trade secrets to the company." (*Id.* ¶ 64.) Gouru's activities ceased "when Plaintiffs changed the login credentials and shut down the server infrastructure access." (*Id.* ¶ 50.)

### B.    Procedural Background

Plaintiffs initiated this action on October 19, 2023, alleging violations of the Defend Trade Secrets Act (the "DTSA"), the Computer Fraud and Abuse Act (the "CFAA"), and state-law claims of conversion, theft of trade secrets, and civil conspiracy, all against fictitious entities. (Compl., ECF No. 1.) Shortly after filing the Complaint, Plaintiffs filed an *ex parte* application seeking civil seizure of the computers and property in Gouru's possession. (Ex Parte Appl., ECF No. 6.) The Court denied Plaintiffs' request, finding that Plaintiffs' request was largely based on conjecture and speculation. (*See* Nov. 15, 2023, Mem. Order 7-9, ECF No. 8.) Plaintiffs thereafter filed an Amended Complaint, naming Gouru and LG Electronics, Inc. as defendants, and adding a claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO"). (Am. Compl., ECF No. 9.) Plaintiffs also filed a renewed *ex parte* application seeking a civil seizure of computers and

property in Gouru's possession, or a temporary restraining order. (Renewed Ex Parte Appl., ECF No. 10.) The Court again denied Plaintiffs' request, this time finding that Plaintiffs failed to provide sufficient proof that would warrant the extraordinary relief sought. (*See* Dec. 19, 2023, Mem. Order, ECF No. 16.)

Plaintiffs thereafter filed a Second Amended Complaint, this time asserting claims against Gouru, LGEUS, and Akhil Karunakaran[3] ("Karunakaran"), and removing LG Electronics, Inc., as a defendant. (Second Am. Compl., ECF No. 20.) Plaintiffs also filed a motion for a temporary restraining order (Mot. for Order to Show Cause, ECF No. 28), and subsequently withdrew the motion (Jan. 2024 Stipulation & Order, ECF No. 47.) Upon a stipulation and order, in April 2024, all deadlines in this matter were stayed pending a settlement conference. (Apr. 2024 Stipulation & Order, ECF No. 68.) That settlement conference, held on August 1, 2024, was unsuccessful. Plaintiffs then filed a Third Amended Complaint, asserting the same claims and adding a claim for unjust enrichment. (Third Am. Compl., ECF No. 75.) Defendants moved to dismiss the Third Amended Complaint (Mots. to Dismiss, ECF No. 78, 80), which the Court granted, dismissing all the claims against Defendants without prejudice (the "May 2025 Opinion") (May 5, 2025, Mem. Op., ECF No. 87; May 5, 2025, Order, ECF No. 88).

Plaintiffs subsequently filed the FAC, alleging seven counts: (1) trade secret misappropriation in violation of the DTSA ("Count One"); (2) violation of the CFAA ("Count Two"); (3) a civil RICO claim ("Count Three"); (4) conversion ("Count Four"); (5) theft of trade secrets ("Count Five"); (6) civil conspiracy ("Count Six"); and (7) unjust enrichment ("Count Seven"). (*See generally* FAC.) Gouru and LGEUS each moved to dismiss the FAC in its

---

[3] Plaintiffs have not yet filed any proof of service on Karunakaran, who Plaintiffs allege has relocated to India. (FAC ¶ 5.)

entirety. (*See generally* Gouru's Mot. to Dismiss, ECF No. 97; LGEUS's Mot. to Dismiss, ECF No. 98.)

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure[4] 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

A district court conducts a three-part analysis when considering a motion to dismiss under Rule 12(b)(6). *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). First, the court must identify "the elements a plaintiff must plead to state a claim." *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009). Second, the court must identify all of the plaintiff's well-pleaded factual allegations, accept them as true, and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). The court can discard bare legal conclusions or factually unsupported accusations that merely state the defendant unlawfully harmed the plaintiff. *See Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Third, the court must determine whether "the [well-pleaded] facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 678). On a Rule 12(b)(6) motion, the "defendant bears the burden of showing that no claim has been

---

[4] All references to "Rule" or "Rules" hereafter refer to the Federal Rules of Civil Procedure.

presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

## III.    DISCUSSION

Defendants argue that Plaintiffs failed to sufficiently plead any claim against them. (*See generally* Gouru's Moving Br., ECF No. 97-1; LGEUS's Moving Br., ECF No. 98-1.) The Court addresses each cause of action in turn.

### A.    DTSA and Common Law Trade Secret Theft[5] (Counts One and Five)

Both Gouru and LGEUS argue that Plaintiffs have failed to remedy the deficiencies that this Court identified in its May 2025 Opinion, and therefore, have once again failed to state trade secret misappropriation claims under both the DTSA and common law. (Gouru's Moving Br. 9-18; LGEUS's Moving Br. 11-19.)

To adequately plead a claim of trade secret misappropriation under the DTSA, a plaintiff must plead:

> (1) the existence of a trade secret, defined generally as information with independent economic value that the owner has taken reasonable measures to keep secret[]; (2) that "is related to a product or service used in, or intended for use in, interstate or foreign commerce[]"; and (3) the misappropriation of that trade secret,

---

[5] Due to the similarity of the DTSA and common law trade secret theft claims, the Court considers the claims together. *See, e.g.*, *Ho-Ho-Kus, Inc. v. Sucharski*, No. 23-1677, 2023 WL 7403539, at *6 (D.N.J. Nov. 9, 2023) (considering plaintiff's DTSA and New Jersey common law claims for trade secret misappropriation together); *see also Scherer Design Grp., LLC v. Schwartz*, No. 18-3540, 2018 WL 3613421, at *4 (D.N.J. July 26, 2018) ("For Courts in this District, the analysis under the DTSA folds into that of [the New Jersey Trade Secrets Act].").

defined broadly as the knowing improper acquisition, or use or disclosure of the secret.[6]

*Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 905 (3d Cir. 2021) (citations omitted). "[I]nformation alleged to be a misappropriated trade secret must be identified with enough specificity to place a defendant on notice of the bases for the claim being made against it[,]" but plaintiffs "need not 'spell out the details of the trade secret to avoid' dismissal." *Id.* at 906 (citations omitted).

This Court previously dismissed Plaintiffs' DTSA claim for failing "to provide sufficient detail regarding their trade secrets to 'separate it from matters of general knowledge in the trade[.]'" (May 5, 2025, Mem. Op. 7-8 (quoting *Oakwood*, 999 F.3d at 906).) Plaintiffs significantly bolstered their allegations regarding the purported Greenstar Trade Secrets in their FAC. (*See* FAC ¶ 15.) Specifically, Plaintiffs now spend nearly twenty pages of their FAC detailing the platforms, applications, protocols, algorithm, methodologies, module, architecture, and schema that comprise the allegedly misappropriated Greenstar Trade Secrets and the

---

[6] To state a trade secret misappropriation claim under New Jersey law, plaintiffs must similarly plead that:

> (1) a trade secret exists; (2) the information comprising the trade secret was communicated in confidence . . . ; (3) the secret information was disclosed by that employee and in breach of that confidence; (4) the secret information was acquired by a competitor with knowledge of the employee's breach of confidence; (5) the secret information was used by the competitor to the detriment of plaintiff; and (6) the plaintiff took precautions to maintain the secrecy of the trade secret.

*Rycoline Prods., Inc. v. Walsh*, 756 A.2d 1047, 1052 (N.J. Super. Ct. App. Div. 2000) (citations omitted).

independent economic value that they hold.[7] (*See id.* ¶¶ 15-19.) Plaintiffs also attach exhibits to their FAC to provide additional information regarding the trade secrets at issue and cite to those exhibits in the FAC. (*See, e.g.*, FAC ¶¶ 15(b) (citing Ex. A), 15(n)(iii) (citing Exs. C, D).) Plaintiffs further allege that they undertook "reasonable precautions to keep such information secret and the information derives economic value from not being generally known and/or not being readily ascertainable through proper means by another person or company . . . ." (*Id.* ¶¶ 18, 31.) Plaintiffs allege that these "critical components of the SurgeCloud IoT Platform's distinctive competitive advantage and market-leading capabilities" were "meticulously developed over more than seven years at a cost exceeding $25 million[.]" (*Id.* ¶ 17.) To keep such information secret, Plaintiffs: (1) require employees and contractors with access to the sensitive material to execute confidentiality agreements; (2) store the secret material in restricted-access directories; (3) utilize increased security measures such as maintaining detailed audit logging, firewalls, and special admin passwords; (4) limit access to the full source code and other confidential information; and (5) mark sensitive documents as "Confidential." (*Id.* ¶ 40.) Plaintiffs further allege that Gouru and LGEUS misappropriated those trade secrets by gaining unlawful access on numerous occasions, using credentials Gouru only had permission to use during his employment with Plaintiffs' affiliate. (*Id.* ¶¶ 19-26, 46-47.) In addition to detailing Gouru's use of a "compute super admin login" to unlawfully obtain access to the trade secrets, Plaintiffs also allege that: (1) "LG[EUS] hired Gouru as its Director of Data Solutions to gain access to Plaintiffs' trade secrets"; (2) login attempts were made from LGEUS's headquarters; (3) Gouru made statements regarding purported compensation

---

[7] While Plaintiffs recognize that the FAC's allegations of the purported trade secrets at issue are lengthy, they indicate that they have not "describe[d] their trade secrets as the entirety of their software platforms and programs[,] but rather list the specific trade secrets stolen" because "what was stolen is voluminous . . . ." (Pls.' Opp'n Br. to Gouru's Mot. 14, ECF No. 101.)

by LGEUS "for his transfer of the trade secrets to [LGEUS]"; and (4) LGEUS and its affiliates are "currently using and benefitting from the Greenstar Trade Secrets, stolen from Plaintiffs and/or are planning to use [them]." (FAC ¶¶ 46, 55, 63-65.)

Construing the facts in a light most favorable to Plaintiffs, the Court finds that Plaintiffs' FAC sufficiently pleads claims for trade secret misappropriation under the DTSA and common law. First, Plaintiffs' allegations of the Greenstar Trade Secrets sufficiently put Defendants on notice of the trade secret information at issue.[8] *See, e.g., Oakwood*, 999 F.3d at 907 (finding that "[d]efendants [were] unquestionably . . . on notice of the trade secret information that is at issue" where plaintiff "gave a very precise example by pointing to a particular document . . . that it had disclosed . . . and it specified the contents of that document as containing trade secrets"). Plaintiffs also allege the steps they take to maintain the secrecy of the trade secrets, as well as the independent economic value of the purported trade secrets and their relation to Plaintiffs' technologies and software platforms. (FAC ¶¶ 14, 15, 17, 40); *see Oakwood*, 999 F.3d at 905. Lastly, Plaintiffs allege that both Gouru and LGEUS took steps to misappropriate the Greenstar Trade Secrets by: (1) unlawfully gaining access to the Greenstar Trade Secrets from Gouru's home address and LGEUS's headquarters; and (2) altering unlawfully accessed files by deleting or modifying the files without permission to do so. (FAC ¶¶ 19, 20, 46-47, 50, 99); *Oakwood*, 999 F.3d at 905 (noting that misappropriation includes the "knowing improper acquisition, or use or disclosure of the secret" (citation omitted)). At this stage, such allegations are sufficient. *See, e.g., Rodgers*

---

[8] To the extent Gouru argues that the purported trade secrets Plaintiffs identified are publicly available or do not constitute trade secrets, that dispute is a factual dispute not appropriately decided at the motion to dismiss stage. *See Chung v. Shapiro & Denardo, LLC*, No. 14-6899, 2016 WL 10570919, at *2 (D.N.J. Jan. 29, 2016) ("Defendant's additional arguments . . . are factual challenges to the allegations of the [c]omplaint. Such factual disputes are not appropriate for a motion to dismiss.").

*Grp., LLC v. Lewis*, No. 22-482, 2022 WL 4095785, at *4 (D.N.J. Sep. 7, 2022) (finding the complaint satisfied the notice requirement and plaintiff adequately pled existence of trade secrets where plaintiff "specif[ied] dates that [d]efendants accessed the information, the means through which they accessed it, the types of information that [they] downloaded, the quantity of documents [they] downloaded, and even some of the file names" that were copied).

The Court, accordingly, denies Defendants' Motions to Dismiss Counts One and Five.

**B.    CFAA (Count Two)**

Defendants next argue that Plaintiffs have failed to adequately plead a claim under the CFAA. (Gouru's Moving Br. 19-20; LGEUS's Moving Br. 19-21.) The Court agrees.

"The CFAA was designed to create a cause of action against computer hackers" and even though it originated as a criminal statute, it has since been amended to include a civil cause of action. *Volpe v. Abacus Software Sys. Corp.*, No. 20-10108, 2021 WL 2451968, at *3 (D.N.J. June 16, 2021) (citations omitted). To state a civil claim under the CFAA, a plaintiff must allege that the defendant has: (1) accessed a "protected computer;" (2) done so without authorization or by exceeding such authorization as was granted; (3) done so "knowingly" and with "intent to defraud"; and (4) as a result, "further[ed] the intended fraud and obtain[ed] anything of value." *P.C. Yonkers, Inc. v. Celebrations the Party & Seasonal Superstore, LLC*, 428 F.3d 504, 508 (3d Cir. 2005) (quoting 18 U.S.C. § 1030(a)(4)). Additionally, "plaintiff[s] must allege that the defendant[s'] actions, in violating the CFAA, 'caused damage or loss to the plaintiff[s] in excess of $5,000 in a one-year period.'" *Volpe*, 2021 WL 2451968, at *6 (quoting *Teva Pharms. USA, Inc. v. Sandhu*, 291 F. Supp. 3d 659, 668 (E.D. Pa. 2018)). Courts in this Circuit "require that the loss must generally be in some way related to functionality of the protected computer at issue." *Rodgers*, 2022 WL 4095785, at *7 (quotation marks and citations omitted).

11

In its May 2025 Opinion, the Court dismissed Plaintiffs' CFAA claim because Plaintiffs failed to adequately allege their incurred loss or damage. (May 5, 2025, Mem. Op. 8-10.) Specifically, the Court found that Plaintiffs' "alleged damages, which consist of lost assets and missed revenue, are insufficient to state a claim under the CFAA." (*Id.* at 10 (citations omitted).) In the FAC, Plaintiffs now allege that they incurred a number of costs in "*responding to the theft of the Greenstar Trade Secrets*, conducting a damage assessment and/or efforts to restore the data, program and/or information to its condition prior to the theft[.]" (FAC ¶ 106 (emphasis added).) Plaintiffs claim that such "costs are 'losses' within the meaning of 18 U.S.C. § 1030(e)(11) . . . ." (Pls.' Opp'n Br. to LGEUS's Mot. 21, ECF No. 102.)

As Defendants point out, however (Gouru's Moving Br. 20; LGEUS's Moving Br. 20), Plaintiffs still fail to allege *when* they incurred these costs, and the alleged costs appear to relate to "responding to the *theft of the Greenstar Trade Secrets*" and not the functionality of one of Plaintiffs' own computers. (FAC ¶ 106 (emphasis added)); *Rodgers*, 2022 WL 4095785, at *7. Without more, Plaintiffs again fail to adequately plead a CFAA claim.

The Court, accordingly, dismisses Count Two.

### C.    RICO Claim (Count Three)

Defendants argue that Plaintiffs' FAC fails to allege a RICO claim because Plaintiffs have failed to sufficiently plead the existence of an enterprise and a pattern of racketeering activity. (Gouru's Moving Br. 21-24; LGEUS's Moving Br. 21-26.) The Court agrees.

To state a civil RICO claim, a plaintiff must allege "(1) the conducting of, (2) an enterprise, (3) through a pattern, (4) of racketeering activity." *D'Ambly v. Exoo*, No. 20-12880, 2021 WL 5083816, at *3 (D.N.J. Nov. 1, 2021) (quoting *Gunter v. Ridgewood Energy Corp.*, 32 F. Supp. 2d 166, 173 (D.N.J. 1998)); 18 U.S.C. § 1962. To satisfy the "enterprise" element, a plaintiff must

show "a 'structure,' that is, a common 'purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose.'" *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 368 (3d Cir. 2010) (citation omitted). Additionally, a plaintiff must plead a pattern of racketeering activity, as defined by 18 U.S.C. § 1961(5), by "showing that the defendants engaged in at least two predicate acts within ten years of each other." *Amos v. Franklin Fin. Servs. Corp.*, 509 F. App'x 165, 168 (3d Cir. 2013) (citations omitted).

Plaintiffs have once again failed to adequately plead the existence of an enterprise for the same reasons previously discussed by this Court.[9] (*See* May 5, 2025, Mem. Op. 10-13.) "While an enterprise may be comprised of a 'group of individuals associated in fact,' 18 U.S.C. § 1961(4), it is not sufficient to merely allege claims against multiple defendants and call them an enterprise." *Miller-Bell v. Hall*, No. 23-924, 2023 WL 5153677, at *7 (W.D. Pa. Aug. 9, 2023). Plaintiffs attempt to bolster their allegations of an enterprise in their FAC by alleging that: (1) the purported enterprise includes Defendants "along with other known and/or unknown individuals and entities" (FAC ¶ 109); (2) these individuals "formed and constituted an 'association-in-fact enterprise'" called the "Intellectual Property Theft Enterprise" (*id.*); (3) the members of the enterprise "functioned as a continuing unit for the common purpose of unlawfully acquiring Plaintiffs' valuable Greenstar Trade Secrets" (*id.* ¶ 110); and (4) "Gouru served as a key operative" while LGEUS provided resources and "strategic direction" (*id.* ¶ 111). Beyond conclusory allegations of the roles Defendants played, the FAC, however, still fails to plead the specific steps the Defendants took or the kinds of interactions they had to show the coordinated effort required to

---

[9] Because the Court finds that Plaintiffs fail to allege an enterprise, the Court need not reach Defendants' arguments related to whether Plaintiffs adequately plead a pattern of racketeering activity.

establish an enterprise. *See, e.g., Saucedo v. J. Fletcher Creamer & Sons, Inc.*, No. 19-247, 2022 WL 22896092, at *3 (D.N.J. July 25, 2022) ("Merely asserting that multiple employees of the same corporation had a common purpose . . . is insufficient to allege the 'relationships among those associated with the enterprise' that are necessary to constitute an association-in-fact enterprise." (citation omitted)); *CC Ford Grp. W., LLC v. Johnson*, No. 22-4143, 2025 WL 1810206, at *11 (D.N.J. June 30, 2025) (finding no sufficient allegations to plead an enterprise where the operative complaint was "bereft of connective tissue plausibly alleging an 'enterprise structure' tying together the various actors —that is, 'something more than the fact that individuals were all engaged in the same type of illicit conduct during the same time period'" (quoting *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d at 370)).

The Court, accordingly, dismisses Count Three.

**D.    Conversion (Count Four)**

Defendants argue that Plaintiffs' conversion claim should be dismissed because Plaintiffs' claim is based upon intangible property and conversion claims only apply to tangible property. (Gouru's Moving Br. 24-25; LGEUS's Moving Br. 26-28.) The Court agrees.

"In New Jersey, conversion is defined as an unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of their condition or the exclusion of an owner's rights." *Austar Int'l Ltd. v. AustarPharma LLC*, 425 F. Supp. 3d 336, 357 (D.N.J. 2019) (quotation marks omitted) (quoting *Cap. Health Sys., Inc. v. Veznedaroglu*, No. 15-8288, 2017 WL 751855, at *10 (D.N.J. Feb. 27, 2017)). "It is settled that 'the tort of conversion may be applied only to interference with tangible property and courts have consistently held that intangible property cannot be the subject of such a claim.'" *CLI Interactive, LLC v. Diamond Phil's, LLC*, No. 22-1602, 2023 WL 1818381, at *8 (D.N.J. Feb. 8, 2023)

14

(collecting cases). "Software code, trade secrets, and other intellectual property have generally been recognized as intangible property, that is, property without physical embodiment." *StrikeForce Techs., Inc. v. WhiteSky, Inc.*, No. 13-1895, 2013 WL 3508835, at *8 (D.N.J. July 11, 2013) (collecting cases).

By Plaintiffs' own admission, the conversion claim here is based upon Defendants' purported conversion of trade secrets, which consists of intangible data and source code. (*See, e.g.*, FAC ¶ 123 ("Defendants intentionally and wrongfully converted Plaintiffs' trade secrets to their own use."); Pls.' Opp'n Br. to LGEUS's Mot. 27 ("[T]he FAC alleges that Defendants . . . [stole] substantial amounts of Plaintiffs' proprietary data and source code.").) "[A] claim for conversion of intangible property, such as electronic files or information, will not lie." *Argush v. LPL Fin. LLC*, No. 13-7821, 2014 WL 3844822, at *6 (D.N.J. Aug. 5, 2014) (citation omitted); *see also Austar Int'l*, 425 F. Supp. 3d at 357-58 ("Allegations that a defendant 'misappropriated plaintiff's intangible trade secrets and applied them to defendant's business operation' is insufficient to state a claim for conversion 'because plaintiff did not allege that defendants are in possession of any of plaintiff's tangible property.'" (citation modified) (quoting *Premio Foods, Inc. v. Purdue Farms, Inc.*, No. 11-4968, 2012 WL 3133791, at *6 (D.N.J. July 30, 2012)); *CLI Interactive*, 2023 WL 1818381, at *8 (dismissing conversion claim premised upon the purported misappropriation of trade secrets); *Slim CD, Inc. v. Heartland Payment Sys., Inc.*, No. 06-2256, 2007 WL 2459349, at *12 (D.N.J. Aug. 24, 2007) (dismissing conversion claim because there were no allegations that "any tangible property was converted . . . [where] the only property at issue . . . is intangible customer transaction data transmitted via computer").

The Court, accordingly, dismisses Count Four.

15

### E.    Civil Conspiracy (Count Six)

Defendants next argue that Plaintiffs' civil conspiracy claim should be dismissed because Plaintiffs fail to adequately allege an agreement between Defendants to "act[] in concert to inflict harm upon Plaintiffs[,]" among other failures. (Gouru's Moving Br. 26; LGEUS's Moving Br. 28-29.) The Court agrees.

To state a claim for civil conspiracy under New Jersey law, a plaintiff must allege:

> a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong or injury upon another, and an overt act that results in damage.

*Banco Popular N. Am. v. Gandi*, 876 A.2d 253, 256 (N.J. 2005) (quotation marks and citation omitted). Here, Plaintiffs generally allege that: (1) LGEUS hired Gouru "to gain access to Plaintiffs' trade secrets"; (2) LGEUS "must have been aware of and indeed authorized and ratified the illegal accessing of Plaintiffs' servers . . ."; (3) Defendants "conspired to steal and/or wrongfully convert Plaintiffs' trade secrets"; and (4) "[s]uch actions caused Plaintiffs to incur a huge loss, anticipated to total at least in the hundreds of millions of dollars." (FAC ¶¶ 55, 133, 136.) Such allegations are conclusory and insufficient to adequately plead an agreement, as required to allege a civil conspiracy claim. *See, e.g.*, *Vorhees v. Tolia*, No. 16-8208, 2020 WL 1272193, at *13 (D.N.J. Mar. 17, 2020) (dismissing civil conspiracy claim where plaintiff alleged that defendants "had a secret plan to commit fraud and steal data" and other information, but failed to specifically allege an agreement between the defendants to "infl[i]ct a wrong against or injury upon another" (quotation marks and citation omitted)); *A.C. v. Dwight-Englewood Sch.*, No. 21-6376, 2022 WL 1184799, at *6 (D.N.J. Apr. 21, 2022) (finding that conclusory allegation of the existence of an agreement was insufficient to adequately plead civil conspiracy claim).

The Court, accordingly, dismisses Count Six.

16

### F.    Unjust Enrichment (Count Seven)

Lastly, Defendants allege that Plaintiffs' unjust enrichment claim should be dismissed. (Gouru's Moving Br. 27-28; LGEUS's Moving Br. 29-30.) Plaintiffs oppose, arguing that they have "allege[d] throughout the FAC that Gouru and LG[EUS] have benefitted greatly by the possession and use of the stolen trade secrets, as well as the destruction of Plaintiffs' ability to benefit economically from them." (Pls.' Opp'n Br. to Gouru's Mot. 27.)

New Jersey law provides for a claim for unjust enrichment "where the plaintiff has, under false auspices, conferred a benefit on the defendant." *Ho-Ho-Kus, Inc*, 2023 WL 7403539, at *14. To state such a claim for unjust enrichment, plaintiffs must adequately allege that: "(1) the 'defendant[s] received a benefit' from the plaintiff[s]; (2) 'retention of that benefit [by the defendants] without payment would be unjust'; (3) plaintiff[s] 'expected remuneration from defendant[s] at the time [they] performed or conferred a benefit on defendant[s]'; and (4) the 'failure of remuneration enriched [the] defendant[s] beyond [their] contractual rights.'" *Semeran v. Blackberry Corp.*, No. 15-750, 2016 WL 406339, at *6 (D.N.J. Feb. 2, 2016) (quoting *VRG Corp. v. GKN Realty Co.*, 641 A.2d 519, 526 (N.J. 1994)). "It is well established[, however,] that it is '[e]ssential to an unjust enrichment claim' that there 'is a direct relationship between the plaintiff purchaser[s] and the defendant[s] or "a mistake on the part of the person conferring the benefit."'" *Ho-Ho-Kus, Inc.*, 2023 WL 7403539, at *14 (second alteration in original) (quoting *Semeran*, 2016 WL 406339, at *6).

Here, Plaintiffs have not alleged that they conferred any benefit on Defendants that was unjustly retained or that they expected any remuneration from Defendants. (*See generally* FAC.) Rather, Plaintiffs allege in conclusory fashion that "Defendants received great financial benefits from their conversion and/or use of Plaintiffs' trade secrets and proprietary technology" and that

17

such benefits were received "at . . . Plaintiffs' expense." (*Id.* ¶¶ 139-40.) This is not sufficient or in "align[ment] with the context where an unjust enrichment claim may be pled." *Ho-Ho-Kus, Inc.*, 2023 WL 7403539, at *14 (dismissing unjust enrichment claim and rejecting plaintiffs' argument that "unjust enrichment as trade secret misappropriation represents a 'benefit conferred' on the misappropriator").

Count Seven is, accordingly, dismissed.

## IV.    **CONCLUSION**

For the reasons set forth above, Defendants' Motions to Dismiss are granted in part and denied in part. The Court will issue an Order consistent with this Memorandum Opinion.

_____
**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**

Dated:  2/18/26